IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-2

No. 342A21

Filed 11 February 2022

IN THE MATTER OF: A.K.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18 May 2021 by Judge Scott Etheridge in District Court, Randolph County. This matter was calendared for argument in the Supreme Court on 22 December 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Chrystal Kay for petitioner-appellee Randolph County Department of Social Services.*

*Hill Law, PLLC, by Lindsey Reedy, for appellee Guardian ad Litem.*

*Leslie Rawls for respondent-appellant father.*

MORGAN, Justice.

¶ 1    Respondent-father appeals from the trial court's order terminating his parental rights to "Alice,"[1] a minor child born on 13 December 2017. After careful review, we conclude that the issues identified by counsel for respondent-father as arguably supporting an appeal are meritless and therefore hold that there was no error in the trial court's decision to discontinue reunification efforts, that the evidence

---

[1] We use a pseudonym to protect the identity of the juvenile and for ease of reading.

and resulting findings of fact support the trial court's determination that grounds existed to substantiate the termination of respondent-father's parental rights to Alice, and that there was no abuse of discretion in the trial court's conclusion that it would be in Alice's best interests for respondent-father's parental rights to be terminated. Accordingly, we affirm the trial court's order terminating respondent-father's parental rights to Alice.

## I.    Factual and Procedural Background

On 18 December 2017, the Randolph County Department of Social Services (DSS) filed a juvenile petition in the District Court, Randolph County, alleging that Alice, who was born five days prior to the filing of the petition, was a dependent juvenile. Alice's mother, who was seventeen years of age at the time that the petition was filed, was the named respondent; the identity of Alice's father was unknown at the time of the filing. The petition alleged, *inter alia*, that the mother was not providing proper care to Alice in the hospital after the child's birth and that at the time of Alice's birth, the mother was living with her own father in a home which DSS found to be inappropriate for Alice. Accordingly, DSS sought nonsecure custody of Alice on the grounds of dependency. The trial court thereupon granted nonsecure custody of Alice to DSS.

Subsequent to the initiation of this case, DNA testing established that respondent-father was Alice's biological father, and he was then joined as a

respondent in the action. Respondent-father had been living in Brunswick County, but upon learning that he was the biological father of Alice, respondent-father moved in with his sister and brother-in-law in Randolph County in order to be closer to Alice. Following a March 2018 adjudication hearing, the trial court entered an order in which it determined that Alice was a dependent juvenile and directed that Alice remain in DSS custody with a case plan of reunification. In June 2018, the mother relinquished her parental rights to Alice. Consequently, the mother did not participate in any further proceedings regarding Alice at the trial court level, and the mother is not a party to this appeal.

¶ 4 Respondent-father worked on a case plan with DSS regarding Alice, and by January 2019, he had "completed most of his services and seem[ed] committed to the minor child and meeting her needs." In an August 2019 order, the trial court permitted respondent-father to have one overnight visit per week with Alice. In an order entered in October 2019 following an August 2019 hearing, the trial court approved a trial home placement of Alice with respondent-father, with DSS retaining legal custody of the juvenile.

¶ 5 Later in October 2019, however, respondent-father was arrested and charged with twenty-seven counts of third-degree sexual exploitation of a minor involving children spanning the ages of two years to ten years. Upon respondent-father's arrest, Alice was removed from his home and returned to her previous foster home

placement. In November 2019, respondent-father was also criminally charged with taking indecent liberties with the child, Alice. He was also charged with the criminal offense of statutory rape of a child under fifteen years old with a different alleged victim. As a result of these charges, sexual abuse by respondent-father upon Alice and an injurious environment for her was subsequently substantiated. After a permanency planning review hearing in December 2019, the trial court ordered reunification efforts to cease. Respondent-father preserved his right to appeal the cease reunification order.

¶ 6     On 16 July 2020, DSS filed a motion to terminate respondent-father's parental rights in which it represented that grounds existed to terminate his parental rights on the grounds of abuse, neglect, willfully leaving the child in foster care without making reasonable progress, and dependency. Respondent-father filed an "Answer/Reply and Motion to Dismiss" on 14 August 2020. The motion to terminate respondent-father's parental rights was heard on 18 February 2021 during the Juvenile Session of District Court, Randolph County. Although the trial court determined that DSS had not met its burden to establish abuse as a basis for the termination of the parental rights of respondent-father, nonetheless the trial court determined that DSS had established grounds to terminate his parental rights based upon neglect, willfully leaving the child in foster care without making reasonable progress, and dependency. The trial court thereafter found that Alice's best interests

would be served by termination of respondent-father's parental rights. The termination order was entered on 18 May 2021. Respondent-father appealed both the cease reunification order and the termination order on 16 June 2021.

¶ 7 On 19 October 2021, appellate counsel for respondent-father filed a brief, stating that "[a]fter thoroughly reviewing the court record and the transcripts, the undersigned attorney for [respondent-f]ather can find no issues of merit on which to base an argument for relief. Therefore, she submits this no-merit brief and asks this Honorable Court to independently review the record," citing *In re L.E.M.*, 372 N.C. 396, 401–02 (2019).

¶ 8 Pursuant to N.C. R. App. P. 3.1(e), appellate counsel for respondent-father has identified three general issues for this Court's review which might arguably support relief on appeal: (1) whether the trial court erred by ceasing reunification efforts; (2) whether the trial court erred by making findings of fact in the termination order that were not supported by clear, cogent, and convincing evidence and by concluding as law that termination grounds existed; and (3) whether the trial court erred and abused its discretion by finding that termination of parental rights was in Alice's best interests. Appellate counsel for respondent-father also sent a copy of counsel's no-merit brief, the record on appeal, and the transcript to respondent-father, along with a letter explaining respondent-father's right to file his own pro se brief and instructions on how to do so. Respondent-father has not submitted his own brief or

any other filing to the Court, and a reasonable period of time in which he could have done so has elapsed.

¶ 9     The no-merit brief filed in this Court by appellate counsel on behalf of respondent-father first analyzes the trial court's decision to cease reunification efforts. A trial court order ceasing reunification efforts is reviewed to determine "whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law" as well as "whether the trial court abused its discretion with respect to disposition." *In re J.H.*, 373 N.C. 264, 267 (2020) (alteration in original) (quoting *In re L.M.T.*, 367 N.C. 165, 168 (2013)). After the 4 December 2019 permanency planning hearing, the trial court rendered an order for DSS to cease reunification efforts with respondent-father. Consequently, Alice's permanent plan was changed to a primary plan of adoption and a secondary plan of guardianship. An order ceasing reunification must include "written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C.G.S. § 7B-906.2(b) (2021). The trial court's order need not recite the statutory language verbatim as long as the order makes clear that the trial court considered the evidence in light of whether reunification would be futile or could be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time. *In re L.E.W.*, 375 N.C. 124, 129–30 (2020). Here, the cease reunification order included findings of fact that "[b]ased

on the [respondent-f]ather's lack of progress and current circumstances, ongoing reunification efforts are not likely to lead to successful reunification in the next six month[s] and [are] inconsistent with the juvenile's health, safety and need for a safe, permanent home within a reasonable period of time"; that "[f]urther reunification efforts with the [respondent-f]ather would be contrary to the minor child's best interests, health, safety, and welfare"; and that "[i]t is contrary to the minor child's health, safety, welfare, and best interests to return to the home, care, or custody of any parent today."

¶ 10      The trial court must also make written findings of fact to show the parent's progress toward reunification regarding whether the parent: (1) is making adequate progress within a reasonable period of time under the plan; (2) is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile; (3) remains available to the court, the department, and the guardian ad litem for the juvenile; and (4) is acting in a manner inconsistent with the health or safety of the juvenile. N.C.G.S. § 7B-906.2(d) (2021). Here, the trial court made appropriate findings of fact which addressed the statutory considerations. For example, while respondent-father's completion of all of his court-ordered services prior to the trial home placement was expressly recognized by the trial court with regard to respondent-father's case plan in its findings of fact, the trial court also made findings of fact regarding respondent-father's subsequent arrest on more than

twenty-seven sex offense charges involving juveniles, the discovery of photographs of naked children on his cellular phone, and the substantiation of his sexual abuse of Alice and his exposure of Alice to an injurious environment. In addition, the trial court found that respondent-father was incarcerated with no scheduled trial date and with a substantial bond, and that respondent-father lacked an adequate source of income to support Alice. The trial court also made multiple findings of fact regarding possible relative placements for Alice and problems regarding these potential placements which prevented them from being approved as homes for the juvenile. In light of such factual findings, we conclude that the trial court's conclusions of law were supported and it did not abuse its discretion by ceasing reunification efforts.

¶ 11        Likewise, we conclude that the evidence and findings of fact support the trial court's conclusion of law that a ground existed to terminate parental rights on the basis of dependency.[2] *See* N.C.G.S. § 7B-1111(a)(6) (2021). In a termination of parental rights proceeding, dependency is shown, *inter alia*, when a "parent is incapable of providing for the proper care and supervision of the juvenile . . . and that there is a reasonable probability that the incapability will continue for the foreseeable

---

[2] The trial court found that clear, cogent, and convincing evidence supported three grounds to terminate respondent-father's parental rights: (1) neglect, (2) willfully leaving the juvenile in foster care for more than twelve months without showing to the satisfaction of the court that reasonable progress under the circumstances had been made in correcting the conditions that led to her removal, and (3) dependency. The "adjudication of any single ground . . . is sufficient to support a termination of parental rights." *In re D.C.*, 378 N.C. 556, 2021-NCSC-104, ¶ 13 (quoting *In re E.H.P.*, 372 N.C. 388, 395 (2019)).

future . . . and the parent lacks an appropriate alternative child care arrangement." *Id.* Upon review on the appellate level, we consider "whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings support the trial court's conclusions of law." *In re D.W.P.*, 373 N.C. 327, 338 (2020) (quoting *In re B.O.A.*, 372 N.C. 372, 379 (2019)). Unchallenged findings of fact are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 12 As noted above, the trial court made extensive findings of fact indicating the following: (1) that respondent-father had been arrested and had remained incarcerated on dozens of pending sexual offense charges involving juveniles, including Alice; (2) that DSS had substantiated respondent-father's sexual abuse of Alice, as shown by physical and behavioral evidence regarding the juvenile, along with testimony from respondent-father's sister and brother-in-law, among others; and (3) that respondent-father's suggested alternative placements for Alice had all been found to be unsuitable for the juvenile. In light of these unchallenged findings of fact which were fully supported by the evidence, we affirm the trial court's determination that the ground of dependency existed for the termination of the parental rights of respondent-father, in that respondent-father was incapable of providing for Alice's care and well-being, that there was "a reasonable probability

that the incapacity would continue for the foreseeable future," and that respondent-father lacked any alternative childcare for the juvenile. N.C.G.S. § 7B-1111(a)(6).

¶ 13       As a final potential basis for relief, appellate counsel for respondent-father identifies the trial court's conclusion that termination of respondent-father's parental rights was in the juvenile's best interests. We review a trial court's best interests determination for an abuse of discretion. *In re A.M.*, 377 N.C. 220, 2021-NCSC-42, ¶ 18. Under such review, a trial court's decision will remain undisturbed unless we determine that it is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.U.D.*, 373 N.C. 3, 6–7 (2019) (quoting *In re T.L.H.*, 368 N.C. 101, 107 (2015)).

¶ 14       In determining the child's best interests, the trial court is required to consider and make findings of fact regarding specific statutory factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2021). The trial court made factual findings encompassing

each of the statutory factors: (1) that Alice was three years old; (2) that adoption was "the most likely plan to achieve [a] safe, permanent home" for Alice, that the foster family wanted to adopt her, and that adoption was "very likely"; (3) that termination was likely to aid in accomplishing the permanent plan of adoption; (4) that Alice had a bond with respondent-father but had not seen him since his arrest; and (5) that Alice was significantly bonded with her foster family and her potential sibling in the foster family. None of these findings of fact have been challenged by respondent-father and each of them is supported by evidence introduced during the trial court proceedings. In light of these unchallenged findings of fact which are contained in the termination order and are fully supported by the evidence, we perceive no abuse of the trial court's discretion in its decision that termination of respondent-father's parental rights was in the juvenile's best interests.

¶ 15      After a careful review of the record on appeal and the briefs submitted by the parties in this matter, we agree with respondent-father's appellate counsel that there are no meritorious arguments supporting relief for respondent-father. We therefore affirm the trial court's order ceasing reunification efforts and the trial court's order terminating the parental rights of respondent-father to the juvenile Alice.

AFFIRMED.